E-FILED
Friday, 08 October, 2021  03:53:34 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JAYMO'S SAUCES LLC, ) | |
| ) | |
| Plaintiff/Counterclaim-Defendant, ) | |
| v. ) | Case No. 1:19-cv-01026 |
| ) | |
| THE WENDY'S COMPANY, ) | |
| ) | |
| Defendant/Counterclaim-Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| QUALITY IS OUR RECIPE LLC, ) | |
| ) | |
| Counterclaim-Plaintiff. ) | |

## <u>ORDER & OPINION</u>

This matter is before the Court on a Motion for Summary Judgment filed by Defendant/Counterclaim-Plaintiff The Wendy's Company (Wendy's) and Counterclaim-Plaintiff Quality is Our Recipe LLC (QIOR). (Doc. 81). The Motion has been fully briefed and is therefore ripe for review. For the following reasons, the Motion is granted.

## BACKGROUND[1]

This case involves a dispute over use of a term for which both Plaintiff/Counterclaim-Defendant Jaymo's Sauces LLC (Jaymo's) and Wendy's[2] claim trademark rights.

In September 2015, Jaymo's owner, Jamison Shefts, "conceived the idea of branding his sauces as 'S'Awesome' while conducting a product demonstration" during which a little girl said, " 'this sauce is awesome, it's S'Awesome.' " (Doc. 103 at 4). The precise date on which Jaymo's began using the term "S'Awesome" is disputed, but the parties appear to agree Jaymo's has used the term since January 2016. (*See* doc. 106 at 3–4).[3] In January 2019, days before filing the instant lawsuit, Jaymo's obtained an Illinois state trademark for the term "S'Awesome." (Doc. 103-4).

QIOR owns a federal trademark registration for the mark "It's Saucesome!" with a filing date of December 7, 2010, and a registration date of July 5, 2011. (Doc. 81 at 2).[4] QIOR also owns a federal trademark registration for the mark "Side of

---

[1] Consistent with the summary judgment standard, the following facts are undisputed unless otherwise indicated. Additionally, the facts in this section are limited to those necessary to resolve the instant Motion.

[2] QIOR is an entity affiliated with Wendy's (doc. 76 at 6), so the Court will refer to them collectively unless otherwise specified, consistent with the memoranda.

[3] Wendy's repeatedly cites Jaymo's Illinois Certificate of Registration of the term "S'Awesome" (doc. 103-4), which indicates a first-use date of January 12, 2016, to refute Jaymo's allegation it began using the term in 2015. (Doc. 106 at 3). Wendy's does not expressly dispute Jaymo's allegations it was using the term "S'Awesome" in January 2016 but rather disputes its characterization of its products as " 'S'Awesome' Sauces." (Doc. 106 at 3–4).

[4] Jaymo's alleges QIOR purchased this trademark from an entity who purchased it from the original owner; the original owner sold "approximately 1,500 bottles of sauce from 2010–2017 and stopped supplying stores with its product displaying that mark

2

S'Awesome" with a filing date of July 11, 2017, and a registration date of April 9, 2019. (Doc. 81 at 2). The terms "Saucesome" and "S'Awesome" are phonetically identical. (Doc. 81 at 3). Wendy's has used both marks in connection with the same sauce and was using the phrase "It's Saucesome" in October 2017.[5] (Docs. 72 at 10; 76 at 6).

Jaymo's filed suit against Wendy's for its use of the phrase "Side of S'Awesome". The Complaint asserts five claims: (1) Illinois trademark infringement under 765 ILCS 1036/60; (2) Illinois dilution under 765 ILCS 1036/65; (3) federal trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (4) federal dilution under the Lanham Act, 15 U.S.C. § 1125(c); and (5) a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505 *et seq.*[6] (Doc. 72 at 13–19). To remedy these claims, Jaymo's seeks injunctive relief, disgorgement of profits, actual damages, punitive damages, federal and state statutory damages, and attorney's fees. (Doc. 72 at 20–21).

In response, Wendy's maintains Jaymo's claims are barred by the doctrine of laches and also that Jaymo's Illinois dilution claim is barred by federal law, 15 U.S.C. § 1125(c)(6). (Doc. 76 at 12). Wendy's, along with its affiliate QIOR, further asserts

---

more than a year" before QIOR purchased of the mark. (Docs. 103 at 11; 106 at 8). Wendy's objects to the evidence cited for this allegation, asserting the evidence is not authenticated; it alternatively admits the allegation but maintains it is immaterial. (Doc. 106 at 8).

[5] Wendy's date(s) of first use of the terms "Saucesome" and "S'Awesome" is disputed.

[6] The Complaint does not identify which provision of the Illinois Consumer Fraud and Deceptive Trade Practices Act Wendy's is alleged to have violated; the only specific provision cited therein is 815 ILCS 505-1, the definitions provision. (Doc. 72 at 18–19).

eight counterclaims against Jaymo's in the alternative[7] based on Jaymo's alleged infringement of QIOR's federally registered trademarks of the phrases "It's Saucesome" and "Side of S'Awesome" (one set of the following four claims per mark): (1) federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (Counts I, V); (2) federal unfair competition (Counts II, VI); (3) common law and state law trademark infringement (Counts III, VII); and (4) common law and state law unfair competition (Counts IV, VIII).[8] To remedy their claims, Wendy's and QIOR seek injunctive relief, disgorgement of profits, attorney's fees, costs, and an order pursuant to 765 ILCS 1036/45 invalidating Jaymo's Illinois state trademark for the term "S'Awesome." (Doc. 76 at 21–22).

In the instant Motion, Wendy's and QIOR move for summary judgment on each of Jaymo's claims. (Doc. 81).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting

---

[7] According to Wendy's, its counterclaims only come into play "if the fact-finder determines that there is a likelihood of confusion or any other violation of rights based on the parties' respective uses." (Doc. 76 at 12).

[8] Wendy's and QIOR similarly do not identify the specific provisions of Illinois law at issue with respect to their unfair competition claims or their state law trademark infringement claims. (Doc. 76 at 19–21).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The record is viewed in the light most favorable to the nonmovant, and the Court must draw all reasonable inferences from the evidence in the nonmovant's favor. *BRC Rubber & Plastics, Inc. v. Continental Carbon Co.*, 900 F.3d 529, 536 (7th Cir. 2018). Nevertheless, "[t]he nonmovant bears the burden of demonstrating that such genuine issue of material fact exists," particularly where, as here, the nonmovant bears the burden of proof on one or more issues at trial.[9] *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The parties must support their assertions that a fact is disputed or cannot be genuinely disputed by citing to admissible evidence in the record." *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

## DISCUSSION

Qui prior est tempore potior est jure.[10] Courts considering trademark disputes often resort to this legal maxim to answer the ultimate question: who has priority in a disputed mark? *See* 2 McCarthy on Trademarks and Unfair Competition § 16:1 (5th ed.).

Here, the parties' "Illinois statutory and common law trademark infringement and unfair competition claims are based on the same set of facts and analyzed under the same legal standards as [their] Lanham Act claims." *SportFuel, Inc. v. PepsiCo,*

---

[9] It is Jaymo's burden to prove it owns common law trademark rights in the term "S'Awesome". *See Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 530 (7th Cir. 2003).

[10] "He who is earlier in time is stronger in law." *priority of time*, Oxford Reference, https://www.oxfordreference.com/view/10.1093/oi/authority.20110803100346573 (last visited Sept. 30, 2021).

*Inc.*, No. 16-C-7868, 2018 WL 2984830, at *2 (N.D. Ill. June 14, 2018), *aff'd*, 932 F.3d 589 (7th Cir. 2019). Jaymo's must therefore ultimately prove "(1) its mark is protectable and (2) the defendants' use of the mark is likely to cause confusion among consumers." *Anago Franchising, Inc. v. IMTN, Inc.*, 477 Fed. App'x 383, 385 (7th Cir. 2012) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)).

"Not every single word, phrase, design or picture that appears on a label, webpage or in an advertisement qualifies as a protectable mark[.]" 1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.). "Words or phrases function as trademarks 'when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products.' " *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 596 (7th Cir. 2019) (quoting *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015)). "The party seeking to establish appropriation of a trademark must show first, adoption, and second, 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of [the adopter of the mark].' " *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433–34 (7th Cir. 1999) (quoting *New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1200 (9th Cir. 1979)). Accordingly, the threshold question here is whether Jaymo's used the term "S'Awesome" as a trademark, an issue hotly disputed by Wendy's.[11]

---

[11] Wendy's places much stock in its federal registration of the phrases "It's Saucesome" and "Side of S'Awesome." However, this argument runs thin. "Neither

The Seventh Circuit has directed courts to look "to multiple factors in how a defendant employs a challenged term or phrase to determine whether it serves as a source indicator and therefore is used as a trademark." *Id.* (citing *Quaker Oats*, 978 F.2d at 954); *see also Johnny Blastoff,* 188 F.3d at 433 ("The determination of whether a party has established protectable rights in a trademark is made on a case by case basis, considering the totality of the circumstances.").

> A wide variety of sources may demonstrate "use" sufficient for public identification of a mark, including advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications, as well as in media outlets such as television and radio. So long as the trademarked goods or services are actually provided through or in connection with it, a website that bears a trademark may constitute a *bona fide* use in commerce.

*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 666 (7th Cir. 2016) (internal quotation marks omitted). McCarthy also provides instructive insight on the relevant factors for consideration:

> Some of the common markers of whether a word, phrase or picture is being used as a trademark are: larger-sized print, all capital letters or initial capitals, distinctive or different print style, color, and prominent position on label or in advertising. There must be something which differentiates the designation claimed as a trademark from all the surrounding material. In addition, a designation is not likely to be

---

application for nor registration of a mark at the federal level wipes out the prior nonregistered, common law rights of others. The nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior user. This is true even if the registration has achieved 'incontestable' status." 2 McCarthy on Trademarks and Unfair Competition § 16:18.50 (5th ed.); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992) ("[T]rademark rights derive from the use of a mark in commerce and not from mere registration of the mark[.]").

> perceived as a mark of origin unless it is repetitively used, as opposed to
> only infrequent or sporadic appearance.

1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.) (internal citations omitted).

To establish trademark use, "[i]t is enough . . . if the article with the adopted brand upon it is actually a vendible article in the market, with intent by the proprietor to continue its production and sale. It is not essential that its use has been long continued, or that the article should be widely known, or should have attained great reputation." *S.C. Johnson*, 835 F.3d at 666 (internal quotation marks omitted). Rather, the inquiry is focused on *how* the alleged mark is used. The ultimate question is: "Has the designation claimed as a protectable mark been used in such a way as to make such a visual impression that the viewer would see it as a symbol of origin separate and apart from everything else?" 1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.).

Wendy's argument for summary judgment boils down to the notion that Jaymo's has submitted insufficient evidence to render a triable issue of fact as to whether Jaymo's was using "S'Awesome" as a trademark.[12] To submit this issue to a factfinder, there must be more than "a scintilla of evidence in support of the plaintiff's position." *Liberty Lobby*, 477 U.S. at 252. The Court must therefore consider "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is

---

[12] If Jaymo's were to establish trademark use, the question would then become whether that use established common law trademark rights prior to Wendy's national priority date(s). The evidence submitted by the parties is thus largely focused on the time period prior to Wendy's application for federal trademark registration of the phrase "Side of S'Awesome" in July 2017.

entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' " *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)) (emphasis in original).

Jaymo's argues it has repeatedly and consistently marketed its product as "S'Awesome Sauce". In support of this position, Jaymo's first sauces its argument with its product labels:



(Doc. 103-8). According to Jaymo's, it has sold "thousands upon thousands of bottles of its 'S'Awesome' sauce beginning in 2015" in several midwestern states.[13] (Doc. 103 at 13). Jaymo's further argues it sells its sauces "in live, in[-]person, grocery store demonstrations across the Midwest." (Doc. 103 at 13). Wendy's maintains this is

---

[13] This argument misses the mark; "[e]vidence of actual sales is not necessary to establish" trademark use. *Johnny Blastoff*, 188 F.3d at 434. Rather, the proper focus is on *how* the alleged mark is used and presented.

insufficient to prove trademark use, arguing the placement of the term on Jaymo's product label does not evince the intent for the term to be source identifying, particularly in comparison to the presentation of the house mark: "Jaymo's Sauces." (Doc. 81 at 9–10).

The Seventh Circuit's decisions in *Quaker Oats* and *SportFuel* are useful bookends on this point. In *Quaker Oats*, the Seventh Circuit affirmed the trial court's summary-judgment decision that the phrase "Thirst Aid" was used as a trademark in the slogan "Gatorade is Thirst Aid", which was widely used to market Gatorade products. In so deciding, the court reasoned:

> Quaker's ads do not simply use the words "Thirst Aid" in a sentence describing Gatorade, but as an "attention-getting symbol." In many of the ads, the words "Thirst Aid" appear more prominently and in larger type than does the word "Gatorade." Further, given the rhyming quality of "Gatorade" and "Thirst Aid," the association between the two terms created by Quaker's ads is likely to be very strong, so that "Thirst Aid" appears as part of a memorable slogan that is uniquely associated with Quaker's product. Quaker presented no evidence that its "Thirst Aid" ads do not have this effect on consumers.

*Quaker Oats*, 978 F.2d at 954 (internal citations omitted).

Conversely, the following use of "Sports Fuel" in the slogan "Gatorade The Sports Fuel Company" was held to not constitute trademark use.




In *SportFuel*, the district court distinguished *Quaker Oats*, finding: "In almost all of the instances in which Gatorade uses the slogan 'Gatorade The Sports Fuel Company,' the word Gatorade appears above the words 'The Sports Fuel Company' and in noticeably larger—and bolder—type." *SportFuel*, 2018 WL 2984830, at *3. "The fact that the Gatorade house mark appears more prominently than the rest of the slogan reduces the likelihood that Gatorade is using 'Sports Fuel' as an indicator of source." *Id.* at *4. The district court further found the sparing use of the phrase "Sports Fuel" on product packaging and labeling weighed against a finding of trademark use because "[t]hat is where a consumer would most expect to find source identifiers." *Id.* The Seventh Circuit affirmed, reasoning:

> As in *Quaker Oats*, here Gatorade used the term "Sports Fuel" in conjunction with its house mark. But the similarities end there. The products' individual packaging and displays feature Gatorade's house mark and G Bolt logo more prominently. Gatorade rarely uses the term "Sports Fuel" directly on product packaging, except for where the company labeled a "Sports Fuel Drink" with the term. Instead, it primarily features the slogan on in-store displays and other advertisements—appearing almost as a subtitle to the house mark. Additionally, the "Sports Fuel" slogan lacks the catchy, rhyming play-on-words at issue in *Quaker Oats*. Nothing about Gatorade's use in this context suggests that consumers would view "Sports Fuel" as a source indicator.

*SportFuel*, 932 F.3d at 598.

The instant case bears similarities to both *Quaker Oats* and *SportFuel*. Like in *Quaker Oats*, the term "S'Awesome" is a catchy, unique play-on-words. Further, the term "S'Awesome" has been depicted on each label on Jaymo's sauce bottles since at least 2016, which is seemingly similar to the frequency of use in *Quaker Oats* and dissimilar to that in *SportFuel*. But unlike in *Quaker Oats* and similar to *SportFuel*,

the display of the term on the product label is in smaller, less distinct font than Jaymo's house mark, which appears in highly stylized font and is displayed much more prominently. Significantly, "S'Awesome" unlike "Thirst Aid" in *Quaker Oats* is not tethered to the house mark.  In fact, "S'Awesome" blends into a smattering of text on the label style used on most of Jaymo's sauces; only on the discontinued label[14] does "S'Awesome" somewhat stand out due to the "S" being connected to both "sauce" and "S'Awesome." But even then, the terms "sauce" and "Jaymo's" are significantly more prominent and attention-grabbing than "S'Awesome".

The placement of "S'Awesome" on Jaymo's product label is very similar to that of "inhibitor" on the label at issue in *Sorenson*, in which the Seventh Circuit concluded use of the term "inhibitor" was non-trademark use. 792 F.3d at 724.

 
[15]

---

[14] Jaymo's appears to have discontinued use of the label style featured on the leftmost bottle in the picture of the sauce bottles (doc. 103-8)—the label that most clearly ties "S'Awesome" to the house mark in an attention-grabbing manner—around the time Wendy's began using the slogan "Side of S'Awesome" in September 2017 in favor of the style on the right. (*See* docs. 78 at 16; 77 at 3).

[15] When the Court copied the photo of the WD-40 can appearing in the Seventh Circuit's opinion and pasted it into this Order and Opinion, the result was very

The *Sorenson* court reasoned:

> [W]e believe that no reasonable juror looking at a bottle of Long-Term Corrosion Inhibitor could conclude that the word is used as an indicator of source. Compared to other features in the bottle's design, the word "inhibitor" is much less prominent or noticeable. It is much smaller than the bright and eye-catching WD-40 shield. It is also smaller than the stylized and colored word "Specialist" and the colorful crosshair mark. Finally, the word "inhibitor"—which is written in relatively small, white type—is less attention-grabbing than even the word "Corrosion," which is larger and colored in orange. Due to the word's small size, plain color, and non-privileged placement on the bottle, we find that "inhibitor" is not an "attention-getting symbol," and does not function as a source indicator.

*Id.* (citations omitted).

In attempting to distinguish *Sorenson*, which dealt with the fair use defense,[16] Jaymo's conflates the "descriptiveness" analysis with the "use" analysis despite the Seventh Circuit's explicit words of caution in that regard, *see id.* at 723 ("In [*Quaker Oats*], we cautioned against conflating these two elements of the fair use defense."). Thus, much of Jaymo's attempt to distinguish the case is unhelpful. However, as Jaymo's correctly notes, its position is notably stronger than that of the claimant in *Sorenson* because "S'Awesome" appears on every bottle label, not just one product in a line of similar products. *See id.* at 723 ("Sorensen's argument would be much

---

blurry. Therefore, the Court found an identical, but clear, picture pasted here on Google Images by searching "wd-40 specialist long term corrosion inhibitor". *See* Google Images, https://www.google.com/search?q=wd-40+specialist+long+term+corrosion+inhibitor&rlz=1C1CHBF_enUS915US915&sxsrf=AOaemvJ0qM1hwtTDJlBzI-6xWOWYlvETAA:1633019013754&source=lnms&tbm=isch&sa=X&ved=2ahUKEwiCmufxjafzAhUOGFkFHVjXAU4Q_AUoAnoECAIQBA&biw=767&bih=712&dpr=1.25#imgrc=LE_zDDgSHoH40M (last visited Sept. 30, 2021).

[16] "To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith." *Sorensen*,792 F.3d at 722.

stronger if 'inhibitor' appeared on all of the products in the Specialist line."). It is similarly stronger than the proponent in *SportFuel* because, there, "Gatorade specifically disclaimed exclusive use of the phrase 'The Sports Fuel Company' in its trademark application for 'Gatorade The Sports Fuel Company,' " 932 F.3d at 598, whereas both parties here claim full trademark rights in the contested term.

Nevertheless, the analyses of the placement and characteristics of the contested terms in *Sorenson* and *SportFuel* on the respective marketing materials are highly persuasive given the plain similarities to the placement and characteristics of "S'Awesome" on Jaymo's bottle labels. This is especially true in considering the distinctions between Jaymo's use of "S'Awesome" to the use of "Thirst Aid" in *Quaker Oats*, where the challenged mark was essentially tethered to the house mark and, in some instances, featured even more prominently than the house mark. Application of these analyses compels the finding that the bottle labels themselves fail to give rise to a triable issue of fact on whether Jaymo's used "S'Awesome" as a trademark. While there are inherent attention-grabbing qualities in the unique term "S'Awesome",[17] the nonprivileged placement and emphasis on other terms coupled with the comparatively small, plain font of the term fail to adequately demonstrate it is being used as a source indicator on the bottle labels. *See Sorenson*, 792 F.3d at 724; *SportFuel*, 932 F.3d at 598; 1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.).

---

[17] One could argue the inherent uniqueness of "S'Awesome" is similar to that of "Sports Fuel" as a descriptor of Gatorade.

Examination of Jaymo's proffered marketing materials further supports a finding of non-trademark use. According to Jaymo's, it "markets its 'S'Awesome' sauce with cardboard product sale advertisements, on its website, on twitter, Instagram, and through paid targeted geographic advertising on Facebook." (Doc. 103 at 13). In support of these allegations Jaymo's cites the deposition testimony of its marketing consultant, Travis Platt (hired in early 2017), indicating "S'Awesome" sauce was "always hashtagged" (doc. 103 at 13 (citing doc. 103-6 at 13–20)) and provides screenshots of an Instagram post, its Facebook Page, and a Tweet, each of which are pictured below.







(Doc. 103-5).

These depictions of Jaymo's social media activity, taken together, do not evince a cohesive effort to hold out its products as "S'Awesome Sauces," as argued in the Response. To start, the profile picture on each of the social media accounts is a logo reading "Jaymo's Sauces" in highly stylized white font on a red field; the term "S'Awesome" is entirely omitted. The names and handles for each account also omit any mention of "S'Awesome" and are instead a combination of "Jaymo's Sauces", "@jaymosallpurposesauces", and @jaymos_sauces".

The screenshot of the Facebook page only features the term "S'Awesome" once: in the "About" section heading entitled "Jaymo's S'Awesome Story". It does not feature the phrases "S'Awesome Sauce" or "All-Purpose S'Awesome Sauce"[18] at all. The Tweet caption omits the term "S'Awesome" entirely, and "S'Awesome" is not hashtagged, contrary to Platt's deposition testimony. The logo-type graphic embedded in the graphic featured in the Tweet does contain the term "S'Awesome", but it is so small that it is barely visible even when the Tweet is sized to fit full screen. Only the Instagram post arguably presents the term "S'Awesome" as an attention-grabber, given that it, like "Jaymo's Sauces", appears in red font while the other words appear in an orange/yellow color. Nevertheless, the term is—again—in significantly smaller, plainer font than the house mark. And one Instagram post is insufficient to create a triable issue of fact as to whether the term is operating as a source indicator, even when coupled with the bottle labels here.

---

[18] Nor does it contain the phrase "S'Awesome All Purpose Sauce" as depicted on the bottle label.

Having considered the only evidence proffered by Jaymo's on the issue of trademark use (*see* doc. 103 at 12–15),[19] the Court finds Jaymo's has failed to identify a triable issue of fact as to an issue on which it bears the ultimate burden of proof. In the Court's view, Jaymo's position is based on the mistaken premise that simply using a term on its product labels and occasionally in marketing materials is sufficient to demonstrate protectable rights in that term. Not so. While presentation of an alleged mark on a product label may, in some cases, establish trademark use, the manner in which Jaymo's presents the term on its label fails to do so. That coupled with the *de minimus* use of the term in the proffered marketing materials demonstrates Jaymo's has not been using the term in a manner sufficient to render it an indicator of source. At the end of the day, "[i]f it takes extended analysis and legalistic argument to attempt to prove that a designation has been used in a trademark sense, then it has not." 1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.).

This finding is bolstered by consideration of the evidence proffered by Wendy's on the issue of use. (Docs. 81-7, 81-9, 81-10). Additional posts on Jaymo's Instagram page show pictures of in-store displays and demos; the signage does not advertise the products as "S'Awesome Sauce" or otherwise depict the term "S'Awesome." (Doc. 81-9). And while the term is hashtagged in some Instagram posts, none of the captions refer to the product as "S'Awesome Sauce[s]"; rather the product is consistently called "Jaymo's Sauce[s]". (Doc. 81-9).

---

[19] Excepting a parenthetical stating "(Bottles Photo)" (doc. 103 at 14), Jaymo's argument section fails to actually cite any evidence in the record, which was very unhelpful in analyzing this issue.

18

Wendy's also submits a report from Dr. Robert M. Frank, owner of a company specializing "in research, consultancy and expert witness testimony with respect to trademark infringement matters." (Doc. 81-8). The report analyzed, *inter alia*, Wendy's research efforts prior to adopting and trademarking the phrase "Side of S'Awesome". (Doc. 81-8). This report has significance because it opines that any serious effort by Jaymo's to hold out the term "S'Awesome" as a source indicator would have been revealed in Wendy's pre-registration research—even if such use would have only given rise to an arguable possibility of being classified as trademark use.[20] (*See* doc. 81-8 at 5–7).

Dr. Frank considered both the results of the two comprehensive trademark searches ordered by Wendy's as well as his own independent research and found minimal use of the term "S'Awesome" by Jaymo's. Jaymo's had not applied for federal or state protection of the alleged mark, circulated any press releases containing the term, or meaningfully promoted the term on its website. (Doc. 81-8 at 7). "A review of the sub-pages ('products,' 'recipes' and 'testimonials') from Jaymo's website in April 2016 . . . find[s] <u>no</u> use of the word 'S'Awesome.' " (Doc. 81-8 at 23 (emphasis in original)). This directly contradicts Jaymo's allegation that it began marketing its products as "S'Awesome Sauce" on its website in January 2016 (doc. 72 at 5). Indeed, as of January 2021, Dr. Frank reports only one instance of "S'Awesome" appearing in

---

[20] It is worth noting that Jaymo's does not appear to contest the validity of the comprehensive trademark searches undertaken by Wendy's prior to its registration of the phrase "Side of S'Awesome"; rather, Jaymo's provides a copy of the resulting Trademark Research Report as evidence and refers to Wendy's efforts as "due diligence". (Docs. 95; 103 at 11, 16).

the text on Jaymo's website. (Doc. 81-8 at 24). This is in addition to one banner graphic depicting "It's S'Awesome" and pictures of the bottle labels analyzed above; but as Dr. Frank explains, searches of Internet sites only examine text—they cannot recognize text within graphics—so it is highly unlikely, or even impossible, for Jaymo's website to have been revealed in a search of the term "S'Awesome", even today. (Doc. 81-8 at 24–25). This report thus suggests Jaymo's use of the term has been insufficient to put the public and other entities on notice of its intent to appropriate the term as a trademark. *See ZAZU Designs v. L'Oreal S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) (noting notice to competitors is a relevant consideration).

Finally, the record contains mixed evidence on consumer's perception of the term. Jaymo's serves up a list of 120 people, most of whom are reportedly friends, family, and business associates of Jaymo's owner, who would allegedly testify they associate the term "S'Awesome" with Jaymo's products and expressed confusion when Wendy's began using the term (*see* doc. 103-1 at 58–93),[21] while Wendy's has submitted consumer testimonials and recipes from Jaymo's website, none of which employ the term "S'Awesome" but rather refer to the products as "Jaymo's sauce[s]", "Jaymo's classic sauce", "Jaymo's Classic All-Purpose barbeque sauce", "Jaymo's Premium All Purpose Sauce", etc. (docs. 81 at 4; 81-10). Indeed, there is no evidence of any testimonial or review featured on Jaymo's website containing the term "S'Awesome". (Docs. 81-8; 81-10). It is further undisputed that consumers and retailers, including Kroger, have perceived the term as "awesome" rather than

---

[21] Though, only a handful would testify. (Doc. 103-1 at 89–90).

"S'Awesome". (Docs. 77 at 3; 81-7). While the evidence suggests Jaymo's representatives repeatedly corrected this misunderstanding of the term during live demos (docs. 81-5 at 7; 103-11 at 6), this evidence of confusion as to the term suggests it was not operating as a source identifier. In light of the dearth of evidence from disinterested consumers connecting the term "S'Awesome" with Jaymo's products, the Court finds the evidence on consumer perception of Jaymo's use of the term "S'Awesome" militates against a finding of trademark use. This remains true in light of the 120 friends, family, and business associates who would testify they associate the term "S'Awesome" with Jaymo's products; such evidence simply does not evince "*public* consciousness" that "S'Awesome" is an identifier of Jaymo's products. *See SportFuel*, 932 F.3d at 596.

Jaymo's has undoubtedly used the term "S'Awesome" as a slogan or catchphrase in its marketing efforts. However, not every slogan is a protectable mark. The evidence submitted by Jaymo's—namely, its bottle labels and some marketing materials—is insufficient to give rise to a triable question of fact on the issue of trademark use, a conclusion affirmed by consideration of the evidence submitted by Wendy's on this issue. Consequently, on careful, holistic review of the evidence submitted and cited by the parties, the Court finds no reasonable jury could find Jaymo's has used the term "S'Awesome" as a trademark. Its claims must therefore fail. As Wendy's counterclaims are made in the alternative (doc 76 at 12), they are dismissed without prejudice.

CONCLUSION

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Defendant and Counterclaim-Plaintiffs The Wendy's Company and Quality is our Recipe LLC (doc. 81) is GRANTED and their counterclaims are DISMISSED WITHOUT PREJUDICE. This matter is TERMINATED.

SO ORDERED.

Entered this 8th day of October 2021.

                                              s/ Joe B. McDade
                                          JOE BILLY McDADE
                                  United States Senior District Judge

22